NADINE RICHARDSON, APPELLANT, v. EMPIRE TRUST COMPANY, RESPONDENT.—94 S. W. (2d) 966.

Kansas City Court of Appeals. May 25, 1936.

*Trusty & Pugh* and *E. H. Gamble* for appellant.

*Groves & Watkins* and *Mytton, Parkinson & Norris* for respondent.

REYNOLDS, J.—This cause arose in the Circuit Court of Buchanan County and is an action for damages.

On December 15, 1933, the plaintiff filed her original petition in the office of the clerk of such court, returnable to the January, 1934, term of the court and thereafter, on May 2, 1935, filed her second amended petition, as follows:

"Comes now Nadine Richardson, plaintiff in the above entitled action and amending her petition herein, for cause of action against defendant, Empire Trust Company, avers:—

"Plaintiff is and at all times herein mentioned was a citizen and resident of St. Joseph, Buchanan County, Missouri.

"Defendant, Empire Trust Company, is and at all times herein mentioned was a trust company, organized and existing under and by virtue of the laws of the State of Missouri, and engaged in the transaction of a general banking business in the city of St. Joseph, wherein said corporation is located, having in said city its office and principal place of business.

"Lloyd E. Richardson, hereinafter mentioned, is and at all times referred to in this petition, he was the husband of plaintiff, as defendant at all said times well knew, and was a stockholder, officer, and general manager of Mid-American Food Products, Incorporated, hereinafter mentioned as 'Mid-America.'

"Saturday, November 11, 1933, said Mid-America executed and delivered to plaintiff, who then was in its service, a check in the sum of $12, drawn upon defendant, Empire Trust Company, whereby said Mid-America ordered defendant to pay plaintiff, or her order, the sum last aforesaid.

"Said check was signed by Lloyd E. Richardson, manager of said Mid-America, and countersigned by R. J. Richardson; and as so executed it was delivered to plaintiff, who accepted it in due course and for full value, being for salary due plaintiff from said Mid-America on the date thereof.

"Said Mid-America at said time and on said date and at all times up to and including the date of the presentation of said check to defendant for payment as hereinafter set forth, had on deposit an open checking account in defendant, subject to checks of the character aforesaid, a balance due to said Mid-America in an amount greatly exceeding that of said check.

"Said Lloyd E. Richardson and said R. J. Richardson were duly authorized by said Mid-America and also by defendant to execute checks of such character, and upon such execution having occurred and the presentation to defendant of said check properly endorsed, it was the duty of defendant to pay the same.

"On the date plaintiff received said check as hereinabove set forth, she endorsed and negotiated the same to 'The Vogue,' a mercantile establishment in the city of St. Joseph, which accepted the same from plaintiff in consideration of full value delivered and paid to her; and thereafter 'The Vogue' presented said check or caused the same to be presented, to defendant for payment.

"Although the foregoing transactions with respect to said check occurred in due course, nevertheless defendant wrongfully refused to pay said check upon its presentation, and attached thereto a slip bearing the words 'Account Closed,' marked said words in pencil, rejected said check, and returned it unpaid and dishonored to 'The Vogue' bearing said 'Account Closed' slip thereto attached. Also, defendant falsely informed the manager of 'The Vogue,' Harry B. Cushman, that the account on which said check had been drawn was exhausted, that there was no account in defendant from which to pay it, and that it would be useless to again present it to defendant, and defendant's failure, neglect and refusal to pay said check have ever since continued.

"Defendant not only made the aforesaid representations to said Cushman, but at the same time wrongfully withheld and concealed from him the following facts:—

"(a) That whatever might have been the condition of the Mid-America account with defendant at the time said check actually was presented to defendant for payment, nevertheless at the time when said check was issued by said Mid-America and negotiated by plaintiff on November 11, 1933, the account of said Mid-America with defendant was amply sufficient to pay said check. ·

"(b) That up to the time defendant rejected said check, it had not given or caused to be given to said Mid-America, nor to said Lloyd E. Richardson, nor to this plaintiff, nor to anyone connected with said Mid-America, any notice or intimation of intent on the part of defendant not to pay any such check of said Mid-America which it might draw upon defendant within the limits of its deposit aforesaid.

"(c) That defendant knew of no reason why either plaintiff or her husband should believe or suspect that defendant would not pay said $12 check at sight.

"Defendant knew or by due care could have known or anticipated that by its aforesaid acts and representations and by its silence and concealment aforesaid, it would, and the fact is that it did, cause said Cushman to act as hereinafter set forth.

"In manner aforesaid defendant slandered and libeled this plaintiff, and thus caused said Cushman to lodge with the prosecuting attorney of Buchanan County, Missouri, an accusation charging plaintiff and her husband with having issued, endorsed and negotiated said check to cheat and defraud 'The Vogue' in violation of law in such cases made and provided, including sections 4304 and 4305 of the 1929 Revised Statutes of Missouri.

"Thereupon said matter was turned over to W. B. Duncan, Ernest Binnicker, and A. J. Bielby, who were assistant prosecuting attorneys of said Buchanan County, duly authorized in regular course of business and by law to represent and act for said prosecuting attorney in dealing with accusations of such character, and thereon to cause the arrest and imprisonment of the person or persons so accused.

"Said W. B. Duncan immediately communicated with defendant, made his identity known to it, accurately described said check, informed defendant of said accusation by said Cushman, and that he, the said assistant prosecutor, was considering the institution of criminal proceedings thereon, if it should appear that on the date of said check, November 11, 1933, and thereafter up to and including the time of its presentation to defendant, Mid-America had no deposit in defendant sufficient for and subject to the payment of said check, and that plaintiff and her husband had no reason to believe at the

time said check was executed, delivered and negotiated that said Mid-America had funds or credit in or with defendant to pay said check, unless defendant would give him some information to the contrary, or indicating that said check was issued to and received and negotiated by plaintiff without any intent by the parties to the check to perpetrate a fraud thereby, and asked defendant for all facts within its knowledge respecting such matters.

"Thereupon defendant told said assistant prosecutor that neither at the time said check was presented for payment, nor on November 11, 1933, when the same was dated, issued and negotiated, nor at any intervening time, did Mid-America have any deposit, funds or account in defendant, and that the account of said Mid-America with defendant had been closed before said check was uttered, leaving no deposit, account, fund or other means in defendant from which defendant could have paid or satisfied said check; and defendant withheld and concealed from said assistant prosecuting attorney the same facts which it is hereinbefore alleged defendant concealed and withheld from said Cushman.

"Defendant conducted itself as aforesaid when it knew or by reasonable care might have known and anticipated that the arrest and imprisonment of plaintiff and its attendant circumstances as hereinafter set forth, were among the reasonable possibilities that would or were apt to result therefrom.

"Defendant, in all of its conduct herein mentioned acted through Earl Stevenson, one of its executive officers thereunto duly authorized, and the knowledge and notice of defendant herein set forth and attributed to defendant were through the knowledge and notice of said Stevenson, the scope of whose authority as officer, agent and servant of defendant were such as to make his knowledge, notice, acts and conduct those of defendant.

"On November 16, 1933, at the instance and direction of said assistant prosecuting attorney, who was instigated thereto by the aforesaid conduct and representations of defendant, this plaintiff and also her husband, Lloyd E. Richardson, were arrested on the aforesaid accusation, by one J. W. McFarland, a deputy constable of said County of Buchanan, at their home in St. Joseph, Missouri, who forcibly took plaintiff and her husband into his custody and placed them in the county jail in St. Joseph for a period of several hours, and until said assistant prosecuting attorneys learned the true state of affairs.

"The circumstances attendant upon said arrest and imprisonment were such as to constitute great and exceptional indignities. It was made without knowledge or information by plaintiff or her husband of the nature of the charge against them. The arrest was made summarily and without process. They were well-known in said community and were of good repute. The arrest occurred about mid-day, and

was made in the presence of their young daughter and other members of their household. Plaintiff and her husband were placed in an automobile which was equipped with a police siren, that said McFarland sounded at frequent intervals while driving them in said automobile from their home to the jail. This was a distance of many blocks and through streets of St. Joseph which were thronged with people. Many of these were friends or acquaintances of plaintiff and her husband, who saw and realized that said McFarland was an arresting officer, that the car in which plaintiff and her husband were being transported was one ordinarily used for the carriage of persons under arrest, and that such was the plight of plaintiff and her husband.

"By reason of the facts aforesaid plaintiff was greatly shamed, humiliated and disgraced, and caused to endure great physical suffering, mental anguish and a profound shock by which she was prostrated, and from which she has not recovered. All of said evil consequences to plaintiff have continued and ever will continue.

"The aforesaid arrest and imprisonment, and its attendant circumstances and results were the natural and proximate consequence of the wrongful acts and omissions of defendant as hereinbefore alleged; and by reason thereof plaintiff sustained actual damage in the sum of $3,750.00.

"The conduct of defendant in respects herein described was willful, reckless, wanton and malicious, so as to justify the assessment against defendant of punitive, in addition to actual damages, in the sum of $3750.00.

"WHEREFORE, plaintiff prays judgment in the sum of $3,750.00 actual, and in the further sum of $3,750.00 as punitive damages, a total of $7,500.00, together with her costs in and about this action expended."

To this amended petition, the defendant filed a demurrer, assigning as grounds therefor that the second amended petition does not state facts sufficient to constitute a cause of action against the defendant. This demurrer being sustained by the court, the plaintiff declined to plead further; and judgment was rendered upon the demurrer, dismissing plaintiff's petition.

The plaintiff appeals.

### Opinion.

1. The question to be determined upon this appeal is whether the action of the trial court in holding that the petition failed to state facts sufficient to constitute a cause of action against the defendant and in sustaining the demurrer thereto was correct and proper.

2. A controversy extends through the briefs of plaintiff and defendant as to the nature of the cause of action attempted to be set up in the petition. The defendant contends that, upon the facts alleged therein, the cause of action sought to be stated is one for false

arrest and imprisonment. The plaintiff, to the contrary, contends that the cause of action sought to be set up is not one for false arrest and imprisonment but is analogous to fraud, libel, and slander with false arrest as an incident thereof.

An examination of the petition reveals that, whatever allegations of fraud, libel, and slander may be found therein, the ultimate allegation upon which any cause of action is sought to be based and for which recovery is sought relates to the false arrest and imprisonment of the plaintiff.

That the plaintiff seeks to recover damages for her false arrest and imprisonment and for the wrongful deprivation of her liberty clearly appears from the allegations of her petition. Her entire cause of action is ultimately merged into one for false arrest and imprisonment. The only element for recovery of damages for which any basis is sought to be laid is for false arrest and imprisonment. After reciting the matters constituting the alleged fraud, slander, and libel and after charging her false arrest and imprisonment, the petition concludes:

"The aforesaid arrest and imprisonment, and its attendant circumstances and results were the natural and proximate consequences of the wrongful acts and omissions of defendant as hereinbefore alleged; and by reason thereof plaintiff sustained actual damage in the sum of $3,750.00.

"The conduct of defendant in respects herein described was willful, reckless, wanton and malicious, so as to justify the assessment against defendant of punitive, in addition to actual damages, in the sum of $3,750.00.

"WHEREFORE, plaintiff prays judgment in the sum of $3,750.00 actual, and in the further sum of $3,750.00 as punitive damages, a total of $7,500.00, together with her costs in and about this action expended."

It is evident that, whatever allegations of fraud, libel, and slander the petition may contain, the damages sought to be recovered are for the false arrest and imprisonment alleged; and the cause of action sought to be set up in the petition must be regarded as one for plaintiff's false arrest and imprisonment.

3. The question, therefore, arises whether or not the petition states facts sufficient to constitute against the defendant a cause of action in plaintiff's behalf for false arrest and imprisonment.

It is uniformly held that, where one has been wrongfully arrested and deprived of his liberty without legal process, an action for false arrest and imprisonment is afforded him against the party instigating and causing such arrest and imprisonment. [Coffman v. Shell Petroleum Corp. (Mo. App.), 71 S. W. (2d) 97; 11 R. C. L. 790.]

The constituent elements of a cause of action for false imprisonment are: (1) The detention or restraint of one against his will, and (2)

the unlawfulness of such detention or restraint. The gist of the action is the wrongful arrest of one without a warrant and his unlawful detention. In order to hold one liable in an action therefor, it is always necessary to be shown that such one instigated, caused, or procured the arrest and confinement of the party complaining. The complainant's grievance in such a case is the use against him of force, actual or threatened. Consequently, in the common law procedure, the action must be brought in trespass for an interference with the aggrieved party's liberty. [25 C. J. 448; 11 R. C. L. 791.]

4. The petition herein discloses upon its face that plaintiff was arrested by a deputy constable of Buchanan county summarily, without a warrant, and held imprisoned in the county jail upon the direction of the prosecuting attorney of said county, upon a complaint lodged with him against her by one Cushman, which complaint thereafter was found to be groundless and unwarranted, and that she was discharged. It is nowhere alleged in the petition that the defendant advised, counselled, or even suggested to Cushman that he make such complaint or that it advised or even suggested to the prosecuting attorney that he act upon such complaint and cause plaintiff's arrest. It is nowhere alleged in the petition that the defendant was present at the time that her arrest was made, encouraging the officer to make it, or that it ever advised, counselled, or countenanced such arrest. It is nowhere alleged that the defendant sought or procured plaintiff's arrest and imprisonment. In so far as the defendant is concerned, the petition merely charges it with giving false information to Cushman and to the prosecuting attorney of Buchanan county, upon inquiry made by them respecting the status of the account of "Mid-America" with it at the time that the check in question was issued to plaintiff and at the time that it was endorsed and negotiated by her to Cushman and at the time that it was presented by Cushman for payment and with having withheld true and full information bearing thereon, which would have shown ample funds in the account of "Mid-America" at the time said check was issued, negotiated, and presented with which to have paid the same, and charges that, by reason of the withholding of such true information by it and the giving of such false information by it, the defendant instigated and caused Cushman to make complaint to the prosecuting attorney against her and instigated and caused the prosecuting attorney to act against her.

Of course, the allegations that the defendant, in withholding true information and in giving false information, instigated and caused Cushman to make complaint to the prosecuting attorney and instigated and caused the prosecuting attorney to cause plaintiff's arrest are but mere conclusions upon the part of the pleader and are not the allegations of issuable facts and are not admitted by the demurrer.

Neither is the petition aided in such respect by the further allegations therein to the effect that the defendant knew or by due care could have known or anticipated that, by its acts and representations and by its silence and concealment of facts as noted in the petition, it would cause Cushman to complain to the prosecuting attorney and could have known or anticipated that the arrest and imprisonment of plaintiff and the circumstances attendant thereon were among the reasonable possibilities that would or were apt to result therefrom.

Such allegations serve no purpose in the statement of a cause of action for false arrest and imprisonment, where it must be alleged and shown that the defendant affirmatively instigated, encouraged, countenanced, or caused the arrest.

5. The same rule as to the test of liability applies in an action for false arrest and imprisonment as in an action for malicious prosecution. With respect to the rule in an action of the latter character, this court, in Coffman v. Shell Petroleum Corporation, 71 S. W. (2d) 97, supra, l. c. 103, quoted approvingly the rule as announced in 38 C. J. 395, sec. 23, as follows: "The test of liability in an action for malicious prosecution: 'Was defendant actively instrumental in putting the law in force? . . . To impose liability there must be some affirmative action by way of advice, encouragement.'"

6. One who merely gives information regarding an offense justifying arrest does not incur liability even though, in giving such information, he acts maliciously or acts without probable cause, unless he goes beyond such point and instigates the arrest by suggestion and encouragement and countenances it. [25 C. J. 470, art. 35; Vimont v. S. S. Kresge Co. (Mo. App.), 291 S. W. 159; Lark v. Bande, 4 Mo. App. 186; State ex rel. Fireman's Fund Ins. Co. v. Trimble, 294 Mo. 615, 242 S. W. 934.]

7. We are not unmindful of the contention of the plaintiff that the cause of action sought to be set up is not one for false arrest and imprisonment but one for fraud, libel, and slander, with false arrest and imprisonment as an incident thereof only. From what has been said, it is clear that we, of course, cannot agree with such contention.

If, however, it be considered, as the plaintiff insists, one for fraud, libel, and slander, with false arrest and imprisonment as an incident thereof, no proper foundation appears to be laid in the petition upon which to charge the defendant with liability for the false arrest and imprisonment. Upon the other hand, the petition shows upon its face that plaintiff's arrest was instigated and caused by one Cushman and not by the defendant bank. A cause of action for false imprisonment can not be based upon a mere negation or failure to speak or act but can only be based upon some affirmative act instigating thereto.

That the defendant bank may have defrauded the plaintiff, if so, does not render it liable for damages for her arrest and imprison-

ment, unless, in addition thereto the defendant bank instigated and caused her arrest and imprisonment. That the defendant bank may have libeled the plaintiff, if so, in returning the check which she had negotiated with a slip attached thereto bearing the notation "Account Closed" does not render it liable for damages for her arrest and imprisonment, unless, in addition thereto, it instigated and caused her arrest and imprisonment; nor does the fact that the defendant bank slandered the plaintiff, if so, in advising the holder of the check to whom it was negotiated by the plaintiff and by whom it was presented to defendant for payment that there were no funds in the defendant bank to the credit of the drawer thereof for the payment of the same at the time that it was issued, negotiated, or presented for payment or thereafter, render the defendant bank liable for damages on account of plaintiff's arrest and imprisonment unless the defendant bank in addition to such statements instigated or advised or participated in her arrest and imprisonment.

8. It will be noted that plaintiff was not the drawer of the dishonored check; she was merely the payee therein and the bank was under no obligation to her to pay said check on demand (section 2817, Revised Statutes 1929) as it would have been had she been a depositor with said bank and the drawer of the check. If she had been a depositor therein and the drawer of the check, an action would have been open to her against the defendant bank for actual damages occasioned her and sustained by her by reason of its nonpayment upon demand. [Section 2818, R. S. 1929; Waggoner v. Bank of Bernie, 220 Mo. App. 165, 281 S. W. 130.] But such is not the case here. Being a mere payee in the check, she has no cause of action against the defendant bank on account of its nonpayment. There was no privity between the plaintiff and the defendant bank with respect to the dishonored check in question, either at the time it was negotiated to plaintiff or thereafter; nor does it matter that the relation of husband and wife existed between the drawer of the check and the plaintiff as payee therein. The bank owed no duty whatever to the plaintiff with respect to such check prior to an acceptance thereof by it or a certification thereof made by it. [Section 2817, R. S. 1929, supra.] The petition does not charge that it was ever accepted or certified but shows to the contrary.

9. Moreover, the allegations in the petition as to the fraud practiced, the libel made, and the slander done are mere conclusions on the part of the pleader; and an analysis of the petition fails to show any ultimate facts alleged constituting fraud, libel, or slander upon which such conclusions may be made to rest.

10. The plaintiff, not being the drawer of the check but the payee only, was not liable criminally under sections 4304, et seq., Revised Statutes 1929, unless, at the time that she negotiated the check to

Cushman, she intended to defraud Cushman and knew that the drawer had not sufficient funds or credit with the bank to pay the check. [State v. Felman (Mo. App.), 50 S. W. (2d) 683.] Therefore, even conceding for the purposes of the demurrer that the bank falsely stated that the account upon which the check had been drawn had been closed prior to the issuance of the check, the statement of that fact constituted neither a slander nor a libel of the plaintiff, as there is no allegation in the petition to the effect that the defendant made the statement to Cushman or the prosecuting attorney when questioned by them that plaintiff knew at the time that she uttered the check there were not sufficient funds or credit with the bank to pay the same and that she knew that it would not be paid by the bank.

11. The statutes mentioned, 4304 et seq. of Revised Statutes of 1929, with respect to offenses committed in connection with the making, drawing, uttering, and delivering of checks with intent to defraud make the dishonoring of a check by the bank against which it is drawn prima facie evidence against the maker or drawer thereof of an intention to defraud and of knowledge of insufficient funds or credit with such bank; but such dishonoring is not made prima facie evidence against the payee therein of such facts. That the payee therein had such knowledge or such intention is a matter to be affirmatively shown.·

12. The petition in this case charges that the defendant wrongfully returned to ''The Vogue'' the check bearing the notation ''Account Closed'' and claims that this notation amounted to a libel of the plaintiff. If such amounted to a libel, it was a libel of the maker of the check and not of the payee in the check. In order to have libeled the plaintiff, it would necessarily have included a statement to the effect that the plaintiff, at the time that she negotiated the check, knew that the account had been closed and that there were no funds in the bank with which to pay the check. That the bank may have wrongfully refused to pay the check and thereby have imputed insolvency or bad faith to the drawer of the check would have been no reflection upon the payee therein, as there was no obligation whatever upon the part of the bank to pay the check to the plaintiff or her endorsee; and no imputation of insolvency or bad faith would extend to her from the mere fact that the check was dishonored.

In Michie on Banks and Banking, vol. 2, sec. 140, p. 1105, it is said: ''In most jurisdictions the bank is under no legal obligation to the payee or holder of a check before acceptance, for the reason that there is no privity between them.'' That such is the law in Missouri is settled by section 2817, Revised Statutes 1929, attention to which has hereinbefore been called.

There is no allegation to be found in plaintiff's petition that the defendant bank at any time made any statement to Cushman or the

prosecuting attorney to the effect that plaintiff knew the "Mid-America" account had been closed with it at the time the check was issued to her and by her endorsed to Cushman or that she at such time knew that such check was worthless and would not be paid or that she issued and negotiated it with the intention of practicing a fraud upon Cushman or any other person. The mere statement on the part of the bank that the account was closed at the time that the check was drawn and the attaching to the check of a slip stating, "Account Closed," are not sufficient to constitute a libel upon plaintiff as the payee named in the check.

13. The plaintiff contends that the defendant was guilty of fraud in failing to make a full disclosure of all facts when called upon by Cushman and the prosecuting attorney and that, by reason of such fraud, her arrest and false imprisonment were occasioned. An action for relief against fraud, whereby one seeks to avoid a contract induced by fraud or whereby one seeks to recover property of which he has been deprived by fraud, is afforded; and the same is ordinarily based upon misrepresentations made by one of the contracting parties to the other, which are relied upon by the other to his injury. That a misrepresentation may be made by silence under circumstances where one is required to speak is not denied, but that one's mere failure to speak under any circumstances justifies the unwarranted arrest and imprisonment of another or is an instigation to such arrest cannot be sanctioned. Where one remains silent under circumstances which require him to speak in order to exculpate himself from blame and he fails so to do, his arrest may be justified; but his failure to speak does not, under any circumstances, alone justify the arrest of another. The fact that defendant did not make such full disclosure of all facts of which it had knowledge, if so, when appealed to by the prosecuting attorney, did not render it liable for the act of the prosecuting attorney in directing the arrest and imprisonment of the plaintiff in the absence of any suggestion, recommendation, or other affirmative instigation of the prosecuting attorney to such act by the defendant. We are unable to see wherein the allegations in the petition, now claimed to be allegations of fraud, as such, constitute any cause of action against the defendant for plaintiff's wrongful arrest and imprisonment or are material to any cause of action sought to be set up against it. No relation existed between the defendant bank and the plaintiff with reference to the check in question to which the law annexed the duty upon defendant's part of making any disclosures to the prosecuting attorney concerning it. There was no relation whatever existing between them with reference to such check. That it did make a partial disclosure upon request and failed to make a full disclosure and in such respect even acted maliciously is immaterial. It incurred no liability whatever for the plaintiff's arrest

in the absence of any suggestion or instigation to the end that such arrest be made. [25 C. J., art. 35, supra.]

The plaintiff relies on the case of Cortes v. Baltimore Insular Line, Inc., 287 U. S. 367. However, in that case, there was a relation existing between the steamship company and the seaman of employer and employee to which the law annexed a duty upon the part of the steamship company to the seaman; and the liability in that case was bottomed entirely on the contract between the seaman and the steamship company and the privity that existed between them. There is neither contract nor privity in this case. It was held in that case that the seaman had a remedy in tort for the wrong inflicted, since such wrong was not merely the violation of the contract but was something more. The steamship company's duty to the seaman in that case, which it neglected, was one annexed by law to the relation existing between it and the seaman, which existed as an inseparable incident without regard to the will of the contracting parties; but no such situation exists here.

The petition herein clearly alleges that the plaintiff was arrested without process upon the complaint of Cushman. True, it seeks to couple Cushman's instigation of the arrest with the information given by the representatives of the bank to Cushman and the prosecuting attorney and apparently relies on the failure of the bank to have made some statement by which the prosecuting attorney would have been prevented from causing her arrest. However, there can be no liability on the part of the defendant for the false arrest and imprisonment of the plaintiff where it does not affirmatively instigate, encourage, or directly cause the arrest or assist therein and was not present countenancing it at the time it was made. Such liability can not be predicated upon a mere negation or a mere failure to do or say something. The petition on its face shows that the arrest of plaintiff was due to a complaint made to the prosecuting attorney by Cushman of his own motion and on his own judgment, without its having been suggested or recommended to him by the defendant that he so complain. So far as the petition discloses, the defendant bank did not seek plaintiff's arrest, did not request her arrest, did not advise or instigate her arrest, and had nothing to do with her arrest.

Nor is the situation altered by the fact that, when called on by the prosecuting attorney, the defendant bank was advised of the intention of such attorney to have plaintiff arrested upon the information given him by Cushman unless it gave information exculpating her. As above stated, an action for false imprisonment cannot be made to rest upon a mere negation, but can be made to rest only upon some affirmative act by way of suggestion or recommendation thereto or participation therein.

The petition, therefore, clearly fails to state against the defendant any cause of action for plaintiff's false arrest and imprisonment; and the demurrer was properly sustained.

14. The plaintiff suggests, however, that a sufficient cause of action for fraud, libel, and slander remains if all references to the false arrest and imprisonment be eliminated from the petition. This, however, cannot be true for the reason that no cause of action for fraud, libel, and slander is sought to be stated in the petition except as such fraud, libel, and slander are alleged to have resulted in plaintiff's false arrest and imprisonment. To strike out all such references would be to leave the petition with darkness covering the face thereof and without form and void. Moreover, the matters therein claimed to constitute fraud, libel, and slander constitute no cause of action for such in plaintiff's favor against the defendant bank.

We are not here concerned with the question of whether the petition is amendable or not. We are concerned only with the question of whether it states against the defendant a good cause of action for plaintiff's wrongful arrest and imprisonment or any other cause of action in plaintiff's behalf. We have held that it does not and that the demurrer thereto was properly sustained. When the demurrer was sustained, the plaintiff refused to plead further.

We have given due consideration to the various points made by the plaintiff in her brief but are unable to find them persuasive. We have also given due consideration to the many authorities cited and relied upon by plaintiff in her brief but do not find them applicable to the situation involved herein. [25 C. J. 470, art. 35.]

The judgment of the trial court is affirmed. All concur.