# BURLINGTON TRANSP. CO. et al. v. JOSEPHSON.

## No. 13179.

Circuit Court of Appeals, Eighth Circuit.

Feb. 19, 1946.

J. W. Weingarten, of Omaha, Neb. (H. R. Hanley, of Rapid City, S.D., Francis J. Parker, of Deadwood, S. D., and P. E. Boslaugh, of Hastings, Neb., on the brief), for appellants.

Julius Skaug, of Mobridge, S. D. (H. F. Fellows, of Rapid City, S. D., Pat Morrison, of Mobridge, S. D., and Tom Eastman, of Rapid City, S. D., on the brief), for appellee.

Before SANBORN, THOMAS, and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the defendants in the court below from a judgment in favor of the plaintiff-appellee for damages for false arrest and imprisonment, entered upon a verdict of the jury, in the amount of $19,500, with costs in the sum of $44.-50. Jurisdiction is predicated upon diversity of citizenship and the amount involved.

A statement of the issues tendered in the pleadings is necessary to make clear the contentions of the parties in this court. After alleging jurisdictional facts the complaint continues:

"II. At Rapid City, South Dakota, on July 14, 1944, defendants did wilfully, unlawfully, maliciously,[1] forcibly and without right so to do, falsely arrest, imprison and restrain plaintiff and deprive him of his liberty.

"III. Plaintiff was thereby damaged and injured in his character, good name and reputation; he has suffered intense embarrassment, humiliation and mental anguish; he was compelled to incur and pay attorneys fees and costs in a large amount to obtain his release from said arrest and confinement; he was thereby necessarily compelled to be away from his business and suffered a large consequent loss, all to his damage in the sum of $100,000.00."

A motion of the defendants to require the plaintiff to state the nature and location of his business and to itemize the losses alleged to result because he was "compelled to be away from his business and suffered a large consequent loss" was denied by the court.

The defendants Burlington Transportation Company, hereinafter called the company, and S. L. Spargur, then filed a separate answer in which they admitted the jurisdiction of the court and that plain-

---

[1] The word "maliciously" was stricken by plaintiff before the trial.

tiff was taken into custody by defendants Jensen and McCoy, and denied all other allegations of the complaint. They pleaded affirmatively that the company is a common carrier operating busses in South Dakota and other states and between Rapid City, South Dakota, and other places and that defendant Spargur is the superintendent of its business at Rapid City.

The answer further alleged in substance that the company's rules require passengers on its busses to surrender their tickets to the driver at the door before entering;[2] that on July '14, 1944, one of the busses was being loaded at Rapid City and while the driver was taking tickets in the usual manner the plaintiff engaged in a controversy with the driver, pushed and shoved the driver out of the way and forced his way into the bus without surrendering his ticket and thereafter refused to leave the bus though requested so to do; that although plaintiff had purchased a ticket he conducted himself in a violent, unreasonable and objectionable manner while on said bus; that by reason of his conduct his presence was objectionable, annoying and a source of danger to the passengers; that plaintiff having refused to leave the bus when requested, defendant Spargur made complaint in writing before the deputy clerk of the municipal court of Rapid City that plaintiff by his conduct had violated the city ordinance and he was thereupon taken into custody by defendants Jensen and McCoy, police officers, and shortly thereafter released upon bond.

Defendants Jensen and McCoy filed a separate answer containing allegations similar to those in that of the company and Spargur, alleging also that they are police officers of Rapid City.

At the commencement of the trial it was admitted that no warrant was issued for the arrest of the plaintiff on July 14, 1944, and the court upon motion of the plaintiff ruled that "Under the issues as they now are you [the defendants] will be limited in the evidence to the exclusion of any statement of what happened when he [plaintiff] got onto the bus." This ruling was equivalent in effect to an order striking all that part of both answers referring to the circumstances occurring at the loading of the bus prior to the arrival of the police officers and the arrest of the plaintiff. It eliminated every defense of the defendants Jensen and McCoy and left for trial only the general denial of Spargur and the company and the existence and amount of damages. In view of the nature of the tort complained of, the admission that no warrant was issued, and the allegations of the pleadings, the ruling was not erroneous, as will more fully appear hereinafter.

The plaintiff called defendants Spargur, McCoy and Jensen as witnesses and showed by them that Spargur went to the police station in Rapid City about 9:45 on the morning of July 14, 1944, and "asked them to remove" plaintiff from the company's bus. He was told that he would have to sign a complaint. A complaint was drawn charging a violation of the city ordinance in that plaintiff was disturbing the peace and quiet of others by his violent and offensive conduct. Spargur did not know plaintiff's name at that time and it was not inserted in the complaint which Spargur signed, but did not swear to. No warrant for plaintiff's arrest was issued, but the complaint itself was delivered to the defendants Jensen and McCoy, police officers, who proceeded to the company's bus station where they found the plaintiff seated in the bus, "doing quite a little talking" and "waving his arms quite a lot", arrested him without a warrant, and took him to the police station where they turned him over to the chief of police. At the time of his arrest plaintiff was not disturbing the peace, and he did not violate the city ordinance in the presence of the police officers.

Josephson testified in his own behalf saying that he resides in New York City; that his business or profession is that of a physician engaged in the specialized practice relating to diseases of the eye, ear, nose and throat'; that he maintains an office at 127 East 69th Street in New York

---

[2] Section 8.0903 of the South Dakota Code 1939, provides:

"Passengers pay fare; conform to rules; ejection. A common carrier may demand the fare of passengers at starting or at any subsequent time. A passenger who refuses to pay his fare or to conform to any lawful regulation of the carrier may be ejected from the vehicle by the carrier. This must be done with as little violence as possible, and at any usual stopping place or near some dwelling house. After having ejected a passenger, a carrier has no right to require payment of any part of his fare."

City; and that he is a member of several scientific associations, has made important discoveries, and is the author of several books, pamphlets and articles in medical journals. When asked how extensive his practice has been for the past several years he answered: "Due to the nature of my discoveries I have drawn pretty much the entire world for my practice. My patients come from all of the states of the union, South America and Europe."

He testified further that he was seated in the bus and had a ticket when Officers Jensen and McCoy arrested him; that they showed him the complaint; that he observed that his name was not in it and told them that "if they carried through their procedure they would be guilty of false arrest." When he arrived at the police station he was turned over to the chief of police who treated him very courteously; he was permitted to telephone to his friend; was finger-printed and photographed; was permitted to go out and get his breakfast and was then released on bail. In all he was detained about two and one-half hours. At his request his trial was postponed until the 17th of July, at which time he was discharged.

On the question of damages he testified that he was worried and anxious and quite a bit embarrassed by the arrest; and that his attorney's fees and costs for his release were approximately $500.

Over the objection of counsel for the defendants he testified that due to his delay in returning to New York occasioned by his remaining in Rapid City for his trial he sustained large losses in connection with the remodeling of a building which he had recently purchased; that because of the delay he missed a conference with a contractor with whom he was negotiating for the remodeling, and the delay resulted in a loss of rentals and increased cost of material and labor.

The defendants offered to prove conversations between the police officers and plaintiff at the time of the arrest and the conduct of plaintiff and the circumstances occurring at the bus prior to the arrest, to all of which the court sustained the objection that the testimony was irrelevant and immaterial.

At the conclusion of the testimony the court sustained a motion to direct a verdict for plaintiff upon all issues except the existence and amount of damages on the ground that the undisputed evidence showed that the arrest was illegal in the absence of a warrant and no facts were presented which would justify an arrest' without a warrant under the statutes of South Dakota.

None of the defendants moved for a directed verdict in their favor.

On this appeal the defendants contend that the court erred (1) in denying their motion for an itemized statement of damages and the nature of plaintiff's business; (2) in directing a verdict for plaintiff on all issues except the existence and amount of damages; (3) in the admission and exclusion of evidence; (4) in the instructions to the jury; and (5) in denying their motion for a new trial.

■ The issues are controlled by the substantive law of South Dakota. False arrest and false imprisonment are not defined in the code of that state. In Cullen v. Dickenson, 33 S.D. 27, 144 N.W. 656, 657, 50 L.R.A.,N.S., 987, Ann.Cas.1916B, 115, the Supreme Court of South Dakota said: "In this state, forms of action are abolished by statute, but substantive rights remain. Every wrongful act or omission resulting in damages recoverable in any form of action at common law, unless changed by statute, still constitutes a cause of action, and damages therefor are recoverable in a 'civil action.'" In the cited case the Court said further that the primary right involved in an action for damages for false imprisonment "is the liberty of the citizen—the right of freedom of locomotion—the right to come and go or stay, when or where one may choose. * * * Any unlawful conduct or act imposing actual restraint completes the tort for which an action will lie." See, also, Just v. Martin Bros. Co., 37 S.D. 470, 159 N.W. 44. In Tredway v. Birks, 59 S.D. 649, 242 N.W. 590, 591, the Court said, "False imprisonment is the unlawful restraint by one person of the physical liberty of another." The restraint must be initiated by an assault. A false arrest is an assault and is one means of committing a false imprisonment. 35 C.J.S., False Imprisonment, § 2. In the phrases "false arrest" and "false imprisonment" the word "false" comes from the common law and is synonymous with "unlawful."

■ All those who instigate or participate in an unlawful restraint are liable as joint tort-feasors. 22 Am.Jur. p. 371; 35 C.J.S., False Imprisonment, § 37, p. 550.

■■ There are two elements in false imprisonment: (1) detention or restraint of the person and (2) unlawfulness of such restraint or detention. In the instant case the plaintiff relied upon the arrest without a warrant to establish unlawfulness. Both the admission of the defendants Jensen and McCoy and the undisputed evidence show that the arrest was unlawful in that respect. Section 34.1615 of the South Dakota Code 1939 provides that when a preliminary information is laid before a magistrate, if satisfied that the offense charged has been committed and that there is reasonable ground for believing that the defendant committed it, he must issue a warrant of arrest. The only authority for making an arrest without a warrant is found in § 34.1609 which provides that a peace officer may arrest without a warrant for a public offense committed or attempted in his presence, and in case of the commission of felonies although not in his presence. That the offense charged in the complaint filed with the deputy city clerk was not a felony is conceded. Since no offense was committed or attempted in the presence of the defendant police officers, and since they had no warrant the arrest was unlawful, although they had power under the law to make arrests. Code, § 45.1133.

■■ The court, however, directed a verdict against all of the defendants—not against the police officers only. To support a judgment for damages for false imprisonment the burden is upon the plaintiff both to plead and to prove one of two things, either (1) that the defendant made the unlawful arrest and participated in the unlawful restraint or (2) that the defendant affirmatively instigated, encouraged, incited, or caused the unlawful arrest. 35 C.J.S. False Imprisonment, § 51, subsec. b (3); Richardson v. Empire Trust Co., 230 Mo.App. 580, 94 S.W.2d 966, 970. In the instant case the proof fails completely to show that Spargur or the company in any way participated in the arrest or the detention, and the complaint does not allege and the proof fails to show that they or either of them instigated the unlawful arrest, unlawful only because made without a warrant. All that defendant Spargur did in person and as agent of the company was to request the police to remove the plaintiff from the bus and to sign a complaint drawn by the deputy clerk charging a disturbance of the peace in violation of the city ordinance. Having signed the complaint he could rightfully assume that the officers would proceed in the performance of their duty in a lawful way.

In the case of Smith v. Jones, 16 S.D. 337, 92 N.W. 1084, 1086, Smith brought suit against Jones and others for damages for false imprisonment. The undisputed evidence showed that Jones took no part in the proceedings other than to make the complaint upon which the warrant was issued. The Court held that the facts did not warrant a recovery against Jones for false imprisonment. The court said: "If in making that complaint he [Jones] acted in good faith, he was not liable for false imprisonment. In criminal proceedings a person who simply lays facts before the justice, and leaves all further action to the unbiased and unsolicited conduct of the latter, is not liable in false imprisonment unless he takes some part in the furthering of the arrest or urging the detention." Citing authorities. The great weight of authority seems to be that where a magistrate has jurisdiction over the subject matter of a criminal prosecution, a person making a complaint before him is not, for that act, liable in damages for false imprisonment, even though the complaint is insufficient to charge the commission of a crime. 22 Am.Jur., False Imprisonment, § 33, p. 375; 35 C.J.S., False Imprisonment, § 28, p. 535.

As the record stood at the close of the evidence it is clear that the court erred in directing a verdict against Spargur and the company and in favor of the plaintiff.

The court erred, also, in its rulings in respect of the claim for and the measure of damages. The contentions in this regard relate to the allegation in the complaint that "he [the plaintiff] was thereby necessarily compelled to be away from his business and suffered a large consequent loss."

The only evidence in support of this claim consisted of the testimony of the plaintiff, supra, in which he testified that his business or profession is that of a physician, specializing in diseases of the eye, ear, nose and throat, with his office in New York City. And as to damages to his business he testified that due to his unlawful detention in Rapid City he sustained a loss consisting of rentals and

added costs for remodeling a building which he had recently acquired in New York.

This claim for damages was assailed by the defendants (1) by their motion for a statement of the nature of plaintiff's business and the items comprising the losses sustained; (2) by objections to the introduction of evidence; (3) by exceptions to the instructions; and (4) by motion for a new trial, all of which were overruled by the court. The motion for a new trial was, among other grounds, based upon affidavits obtained in an investigation made by defendants after the trial and claimed by them to show that plaintiff was not the owner of the building described in his testimony but was only the president of a corporation holding title thereto, and that no losses were sustained either by plaintiff or by the corporation due to delay in making the contract for remodeling.

The gist of defendants' complaint as to all these adverse rulings is that damages, if sustained by reason of remodeling a building in New York, are special and not general damages, and that recovery for such damages could not be had because they were not pleaded and because they are speculative.

Rule 9(g) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that "When items of special damage are claimed, they shall be specifically stated."

In the case of Simmons v. Leighton, 60 S.D. 524, 244 N.W. 883, 884, the Supreme Court of South Dakota said: "The distinction between general and special damages and the necessity of a special allegation to permit proof and recovery of damages is well settled. Special, as distinguished from general, damages are those which are the natural but not the necessary consequence of the act complained of. 17 C.J. 715. The plaintiff under a general allegation of damages may recover all such damages as are the natural and necessary result of such injuries as are alleged for the law implies their sequence. 2 Sutherland on Damages (4th Ed.) § 418. Not every loss which may result from an injury is a natural and necessary result of the injury. To permit recovery of other or special damages, there must be allegation of the specific facts showing such damages to apprise the defendant of the nature of the claim against him."

This distinction between general and special damages prevails generally. 25 C.J.S., Damages, § 2; 15 Am.Jur., Damages, § 10. General compensatory damages only were claimed in this case. In other words, only such damages were alleged in the complaint as are the natural consequence of the false arrest and false imprisonment, such as humiliation, embarrassment and the costs incident to obtaining a release from detention. In the federal courts an indispensable allegation in a demand for special damages is a statement "of the special circumstances giving rise to the special damages." Huyler's v. Ritz-Carlton Restaurant & Hotel Co., D.C., 6 F.2d 404, 406, 407.

But the plaintiff claims that the pleading was sufficient to entitle him to special damages. Such claim is unwarranted. "The specific facts showing such damages" (Simmons v. Leighton, supra) were not pleaded, and he resisted defendants' motion to require him to set out the nature of his business and the items claimed as damages to his business. His proof showed that he is a professional, not a business, man. The allegation that "he was thereby necessarily compelled to be away from his business" specifies only loss of time in the practice of his profession. The rule is well settled that "In the case of a professional man the proper measure for damages for loss of time is the amount he would have earned by the practice of his profession." 15 Am.Jur., Damages, § 97. No loss of professional earnings whatever was shown.

The damages, if any, arising out of the remodeling of the apartment building in New York were special damages, and the court erred in overruling the defendants' motion assailing the complaint, in admitting the objectionable evidence, and in permitting recovery under the instructions. We need not pass upon the denial of defendants' motion for a new trial on the ground of these erroneous rulings, since a new trial must be granted any way.

Defendants contend that the court erred in excluding the testimony of Jensen and McCoy on the question of damages for personal injury. On direct examination the plaintiff testified that after the arrest in the bus he was taken to the police station in the police car, and that when he and the officers were seated in the car "Officer McCoy * * * grabbed me by

the neck and choked me." When Jensen was on the witness stand he was asked what happened at that point. The question was objected to by counsel for plaintiff on the ground that it was immaterial and not within the issue in the case. Whereupon

"Mr. Hanley: The man is claiming personal injury, Your Honor.

"The Court: There is no personal injury alleged in the complaint. The claim for damages does not include any claim for damage by reason of personal injury at all."

When McCoy was asked what he did at that time an objection on the ground of immateriality was also sustained.

The jury were instructed, however, that in determining the amount of damages they should take into consideration "what, if any, damage the plaintiff sustained by reason of damage to his person. * * *" No evidence, except that of plaintiff, referred to injury to plaintiff's person.

Clearly the instruction was erroneous. Defendants, however, made no objection to plaintiff's testimony in regard to the personal assault, and they did not request an instruction upon the measure of damages. But they did take exception to the instruction given.

Upon the trial the plaintiff carefully limited his evidence to the circumstances attending the unlawful arrest without a warrant, to the events following the arrest, and to the subject of damages; and the court meticulously excluded, upon plaintiff's objection, all evidence of the disturbance of the peace by the plaintiff at the bus before the police officers arrived there to make the arrest. The city ordinance upon which the complaint was based was also excluded. The defendants assign the rulings of the court rejecting their evidence on these matters as erroneous. In so limiting the evidence no case was made against Spargur and the company. Had the plaintiff alleged instigation and produced evidence implicating Spargur in the unlawful arrest or showing that he instigated or induced the police officers to make the arrest without a warrant evidence of all these excluded circumstances would have been admissible on the question of his good faith under South Dakota law. Smith v. Jones, supra. Had instigation been in issue such evidence would also have been admissible to show that an arrest was reasonably necessary to eject plaintiff from the bus. But as shown above mere proof that Spargur filed a complaint before a magistrate does not make him responsible for the unlawful arrest by the officers.

Prior to the trial the attention of the court was directed to the fact that plaintiff had instituted a suit for $100,000 damages for malicious prosecution in the district court against these same defendants based upon the same arrest and the proceedings following. Before the trial of this case commenced the defendants moved to consolidate the two cases for trial. The court denied the request. Defendants now ask this court to instruct the district court to consolidate the cases for trial. Since such a request is addressed to the discretion of the trial court we refrain, as the record now stands, from giving any direction to the court upon this point.

Other assignments of error have been examined, and we find either that they are without merit or that the points which they involve will probably not arise on a new trial.

For the errors pointed out the judgment appealed from is reversed and the case remanded with instructions to grant a new trial.