257 S.W.2d 198 (1953)
HAYES
v.
DALTON.
No. 28519.
St. Louis Court of Appeals. Missouri.
April 21, 1953.
Roberts & Roberts, Farmington, for appellant.
Melvin Englehart, Fredericktown, for respondent.
BENNICK, Presiding Judge.
This is an action for both actual and punitive damages growing out of an assault.
*199 The incident which gave rise to the cause of action occurred on December 22, 1950, on the farm of defendant, Lyman Dalton, in the southwestern corner of Ste. Genevieve County.
At the time in question the plaintiff, Clinton Hayes, owned and operated a sawmill in the general vicinity of defendant's land.
Plaintiff had purchased some standing timber from one Tibbs whose land lay beyond that of defendant and could be reached by plaintiff most conveniently over an unimproved private road which extended across an uncultivated portion of defendant's land. At either end of the road defendant maintained gates, one of which was located about 300 yards from his residence.
The first time plaintiff was ever upon defendant's land was when he was taken across it by Tibbs on the occasion of his purchase of the latter's timber.
When plaintiff started to remove the timber a couple of days before his trouble with defendant, he had with him on the job his two sons, Lowell and Tommy, and his nephew, Ray Barton. For hauling the logs from the Tibbs tract to the mill he employed a wagon pulled by a team of mules, and also two trucks, the one a conventional GMC truck, and the other an army truck which he had bought at a sale of war surplus commodities.
Plaintiff began the work of removing the logs on Wednesday, December 20th, and immediately attempted to contact defendant for the purpose of getting his permission to use the private road. Being unable to get in touch with defendant, plaintiff crossed over the land without permission on December 20th, but on Thursday morning, December 21st, he finally located defendant and obtained permission to use the road. Defendant told plaintiff that he had planned to erect signs against trespassing on his land, but had decided not to put them up when he learned that it was plaintiff who was going through.
The first intimation of possible difficulty came some time during Friday, December 22nd, when defendant came up to plaintiff's son, Lowell, and advised him that it would be necessary to put a stop to their use of his property because of the damage being done to the road. After he and Lowell had inspected the road together, defendant announced that the equipment might be moved back across it the one more time, but that plaintiff would not be permitted to use it again. Lowell informed his father of what defendant had said, so that plaintiff was aware of defendant's change in attitude when he started back to the mill with his equipment at the end of work that afternoon.
When plaintiff and his party reached the first gate, they found defendant already there awaiting their arrival. Defendant told plaintiff that he would not be permitted to use the road any longer, and then climbed up into the rear of the truck that plaintiff himself was driving for the purpose of riding to the top of a nearby hill. Incensed at defendant's action in denying him the further use of the road, plaintiff ordered defendant off his truck, whereupon defendant jumped to the ground, picked up a rock, and threw it at plaintiff, striking him squarely in the back. Lowell and Ray Barton immediately retaliated by throwing rocks at defendant, who announced that he was going to get his gun and kill them. Plaintiff suggested that he and his party move on, and by the time they had proceeded something like a quarter of a mile along the road, defendant began shooting in their direction. One bullet grazed plaintiff's knee, and other bullets struck and did damage to the trucks and their accessories. Plaintiff and the others abandoned the trucks and ran and did not see defendant again until the following morning when they all met in the office of the prosecuting attorney where defendant boasted that he had fired the shots.
The action was instituted in the Circuit Court of Ste. Genevieve County, and then sent on change of venue to the Circuit Court of Madison County.
While plaintiff was not required to do so, he elected to draw his petition in two counts, the first for damages for his personal injuries, and the second for damage to his trucks. In the first count he sought recovery of $250 actual damages and a like *200 amount of punitive damages. In the second count he sought recovery of $691.51 actual damages and a like amount of punitive damages.
The answer was a general denial joined with a counterclaim in which defendant prayed for damages in the sum of $1,500 because of injury allegedly done to his road, and also because of the act of plaintiff and his employees in allegedly cutting down a number of trees upon his land.
The only issues submitted to the jury were those arising on plaintiff's cause of action. For want of any attempt at the submission of the issues arising on the counterclaim, the same is to be taken as having been abandoned.
A verdict was returned in favor of plaintiff, and against defendant, on plaintiff's cause of action for the sum of $1,333.02. Judgment was entered in accordance with the verdict; and following an unavailing motion for a new trial, defendant gave notice of appeal, and by proper successive steps has caused the case to be transferred to this court for our review.
For his first point defendant argues that the jury's finding of his responsibility for the damage to the trucks could have been based on nothing more than speculation and conjecture. He of course has no misgivings about the sufficiency of the evidence to show that he fired towards the trucks and that they were struck by bullets from his gun. What he does question, however, is the sufficiency of the evidence to show that he inflicted the character of damage which plaintiff's evidence disclosed and for which the jury undertook to compensate plaintiff by the verdict they returned.
The testimony respecting the extent of the damage done to the trucks was based primarily upon the observations made by plaintiff and his witnesses when they returned to defendant's land the day after the affray to remove the trucks which they had abandoned when the shooting began. They found the trucks exactly where they had left them, and immediately investigated the damage that had been done. As for the GMC truck, there were two bullet holes through the left door and one through the windshield. All six tires had holes from bullets which in each instance had entered from the side. There was disagreement between the witnesses as to whether any damage had been done to the tires of the army truck. A member of the state patrol testified that some of those tires were also flat and that the bullets had entered from the rear. There were holes in the radiators and carburetors, and some of the wiring on the motor of one of the trucks had been cut. A repairman testified that the bullet through the radiator of the GMC truck had entered from the front. It appeared to plaintiff himself that this particular radiator had been struck with several small bullets.
The sum and substance of defendant's contention is that he could not be charged with much of the damage done to the trucks if the parties occupied the relative positions at the time of the shooting which plaintiff's other evidence disclosed. He argues, therefore, that the court erred in admitting the testimony respecting the damage to the trucks, and that the practical effect of the admission of such testimony was to authorize the jury to decide the question of damages on speculation and conjecture.
Defendant's contention necessarily presupposes that he fired from directly in the rear of the trucks and for that reason could not be held responsible for any damage inflicted by bullets other than those which struck the trucks from the rear. What he overlooks, however, is the fact that the evidence was not at all conclusive as to what his position was at the time he fired each and every shot. Plaintiff testified that he himself did not know defendant's position and could not say that the shots were fired from a point directly to the rear of the trucks. Furthermore the trucks were in motion during the fusillade of shots; and for all that the evidence discloses, defendant may likewise have been moving about in his selection of vantage points from which his shots would be the more effective. While we appreciate the impossibility of reconciling all the minute details of the testimony with the whole picture *201 of the case, such inconsistencies as were present could not have warranted the exclusion of all the testimony respecting the damage done to the trucks. Instead it was for the jury to evaluate the testimony and only allow compensation for so much of the damage as was reasonably traceable to defendant's wrongful acts.
The question at once arises, however, as to whether the jury were properly instructed as to how the amount of plaintiff's damages should be ascertained.
By instruction No. 3 the jury were told that if they found for plaintiff on count 2 (the count for damage to the trucks), then in assessing the amount which plaintiff was entitled to recover they should take into consideration the reasonable value of any necessary repairs made upon the two trucks, not to exceed the sum of $416.51.
The same theory was also incorporated in instruction No. 4, which told the jury that they should allow plaintiff whatever actual damages he had sustained as to either count or both counts upon which they might find in his favor, not to exceed the sum of $666.51. This figure, incidentally, comprised the aggregate of the two items of damages which plaintiff sought to recover$416.51 as the cost of repairs to his trucks, and $250 for injury to his person. The instruction also submitted the question of the allowance of punitive damages within the same limitation as actual damages.
Defendant's chief complaint about the two instructions is that there was no evidence to support the submission of the item of necessary repairs in an amount not to exceed $416.51. The matter is of importance for the reason that in returning a verdict in plaintiff's favor for the single sum of $1,333.02, the jury were obviously undertaking to allow the maximum amount of both actual and punitive damages authorized by instruction No. 4, which, in each class of damages, was not to exceed the sum of $666.51, and which, in the case of actual damages, included the item of repairs to the trucks in a sum not to exceed $416.51.
Fundamentally the measure of damages for injury to an article of personal property such as an automobile is the difference in the reasonable market value of the automobile before and after the injury, which may be shown by proof of the reasonable and necessary cost of repairing and restoring the automobile to its condition prior to the injury. If the cost of repairs results in causing the automobile to be more valuable than it was before the injury, such excess must be deducted from the cost of repairs, while if the automobile, after the repairs are made upon it, is still not as valuable as it was before the injury, the owner may then recover, in addition to the cost of repairs, such amount as will equal the difference between the value of the automobile after the repairs are made upon it and immediately prior to the injury. General Exchange Ins. Corporation v. Young, Mo.App., 206 S.W.2d 683; Conner v. Aalco Moving & Storage Co., Mo.App., 218 S.W. 2d 830; Blanke v. United Rys. Co., Mo. App., 213 S.W. 174.
In this case plaintiff concedes that the amount he had expended for repairs was only $196.20, and not $416.51 as the instruction authorized the jury to find, and as they did in fact find. The allowance over and beyond $196.20 plaintiff seeks to justify upon the ground that it represented the difference in the value of the tires before and after the injury to them, and was therefore properly added to the cost of the repairs to the trucks, exclusive of the tires, in order to compensate for the total damage. The trouble is, however, that the two instructions were not drawn upon such theory, but instead were predicated upon a measure of damages which there was no evidence to support. We have considered the situation in the light of all the explanations and excuses which plaintiff offers in his brief, but find no recourse except to hold that the error was one materially affecting the merits of the action and prejudicial to defendant's rights.
There is a further question that may reappear upon a retrial of the case, and for such reason should be given attention.
It will be recalled that one of the witnesses to the occurrence which gave rise to the lawsuit was plaintiff's nephew, Ray Barton. At the trial of the case Barton *202 was unavailable as a witness because of the fact that he was away from home in the country's military service. Plaintiff knew nothing of his whereabouts except for a statement reaching him indirectly from Barton's mother that he was somewhere in California. In this situation plaintiff sought and received permission to read the transcript of Barton's testimony which had been previously given in the trial of a criminal prosecution instituted against defendant for the very act involved in the present proceeding. In giving such testimony Barton had been subject to defendant's right of cross-examination; and the transcript of his testimony in the criminal case was therefore competent at the trial of the same issue in the civil action. In re Falzone, 240 Mo.App. 877, 220 S.W.2d 765.
The judgment rendered by the circuit court should be reversed and the cause remanded, and it is so ordered.
ANDERSON and HOLMAN, JJ., concur.