Marion GERALD, Plaintiff-Respondent,

v.

CATERERS, INC., Defendant-Appellant.

No. 23993.

Kansas City Court of Appeals.

Missouri.

Oct. 5, 1964.

Don B. Roberson, Kansas City, Alan Wherritt, Liberty, for appellant.

Robert B. Wurdack, Kansas City, Wilbur L. Pollard, North Kansas City, for respondent.

HUNTER, Judge.

This is a suit by plaintiff, Marion Gerald, against Caterers, Inc., for damages allegedly resulting from a false arrest and imprisonment caused by defendant. As a result of a jury trial, plaintiff obtained a judgment for $.25 actual damages and $2,000 punitive damages. This appeal followed defendant's unsuccessful motion for a judgment in accordance with defendant's motion for directed verdict or in the alternative for a new trial.

The two questions presented on appeal concern the admissibility of certain statements by plaintiff as to who instigated his arrest, and the correctness of the trial court in overruling defendant's motion for a directed verdict. We limit our factual statement to the matters helpful to an understanding of those questions.

Plaintiff, a thirty-six year old married man with four children, for some time had been an employee of defendant as a fountain man at the Allen's Drive-In in North Kansas City. He also held another full-time job, working a total of about sixteen hours a day. He advised his supervisor, Mr. Cummings, at Allen's that he was going to quit that job at the end of the week as the two jobs were "getting him down". Mr. Cummings advised him he was sorry to see him go as he was a good worker. He worked the remainder of the week and left on Saturday night, a week before pay day.

On May 6, 1960, approximately $45.00 in money was missing from near the cash register at Allen's Drive-In. This loss was not discovered until after the four employees on that shift, including plaintiff, had gone home. Cummings telephoned Howard Carter, defendant's area manager, and reported the loss. Carter came to the drive-in and he and Cummings reported the loss

to Lt. Mann and another policeman who had stopped at the drive-in. Lt. Mann advised Carter he would like to talk to the employees, and he returned the next night and talked to two of them. A third employee did not return to work and has not been seen since. Lt. Mann stated he requested Cummings to tell him when plaintiff returned to the drive-in.

On May 12, 1960, plaintiff telephoned Mr. Cummings at Allen's Drive-In to see if it was convenient for him to pick up his pay check. Although the pay check was not at Allens, Cummings told him to come and get it. Cummings then called the police and advised them that plaintiff was coming to Allen's. He also called Mr. Carter and told him of plaintiff's call. Carter asked him if he had called the police and he said, "Yes".

When plaintiff arrived at the drive-in to get his pay check he went to the vicinity of the cash register where Mr. Cummings was. Cummings told him "Just a minute." Cummings then gave a nod to two plain clothes policemen who were present. The two policemen came up, one of them asked plaintiff his name and advised he was taking plaintiff to police headquarters to ask him some questions "which won't take but a few minutes, then you can go." Plaintiff asked him, "What for. He said he would explain it down at the police headquarters. He didn't want to upset the people while they was eating." One of the two policemen, Officer Gillis, told plaintiff while they were still at the drive-in that he was "under arrest for investigation."

After arriving at the police station plaintiff was interrogated and advised that it was money missing from the drive-in that was involved. Although plaintiff denied any knowledge concerning it, he was held overnight in jail and released about 8:30 a. m. the next morning. No charge was ever filed against him.

Turning to the evidence question, a chronological statement of the pertinent events is helpful. "Q. The question was:

Did the police officer inform you who complained against you, in Mr. Cummings' presence? A. No. The police officers, officer said that Mr. Carter had me picked up for questioning. Mr. Roberson: Objected to, because—THE COURT: That he said what? I didn't hear that. THE WITNESS: Mr. Carter—THE COURT: Uh huh. THE WITNESS:—was having me picked up for questioning, which he said it wouldn't take but a few minutes down at police headquarters, then they'd let me go. THE COURT: Was that in the presence of Mr. Cummings? THE WITNESS: Mr. Cummings was standing there, but the place was full of people, sir, I don't know whether he overheard the conversation or not. THE COURT: Go ahead, overruled." At this point we pause to note that the "objection" made did not contain any grounds therefor.

After additional testimony in chief, plaintiff was cross-examined by defendant's counsel and especially as to whether it was at the jail rather than at the drive-in, and outside the presence of any employee of defendant, that he was told by the policeman that it was Mr. Carter who complained against him and had him picked up for questioning. Upon such questioning plaintiff clearly and repeatedly stated that it was at the police station and outside of the presence of defendant's employees that the statement was made. At this point defendant's counsel made no objection to the repeated statements of plaintiff that he was told by a policeman that it was Mr. Carter who complained against him and had him picked up for questioning. Nor did defendant's counsel make any objection to the earlier evidence on the subject, and did not move to have it stricken.

After plaintiff left the stand as a witness, other witnesses for plaintiff were called, examined and cross-examined, but not on the subject of who instigated or directed plaintiff's arrest and imprisonment.

The next day at the close of all the evidence on plaintiff's behalf defendant's coun-

sel stated, "The defendant at this time files its (oral) motion to strike all conversation that, and all testimony that was adduced and given by the plaintiff with respect to the conversation, all acts that he testified to as occurring at the police station, as well as motioning to strike all purported statements given by unidentified officers at that police station at the time in question. The defendant states that at the time this information was solicited from the plaintiff by direct testimony the defendant objected on the basis of hearsay and the self-serving declarations of the plaintiff, and the Court overruled those objections. And at this time the defendant motions to strike all testimony given by the plaintiff with reference to conversation he had and that conversation officers had with him at the police station again upon the basis it was hearsay and self-serving, prejudicial to this defendant." The trial court overruled the motion to strike.

It is the rule that if a party to a lawsuit desires to object to hearsay evidence, the objection must be promptly made or he will be deemed to have waived the objection. If, however, there is nothing in the questions asked or the answers given that would indicate or disclose that the evidence was hearsay, then a motion promptly made on discovery to have the hearsay stricken from the record should be sustained. Jackson v. Curtiss-Wright Airplane Co., 334 Mo. 805, 68 S.W.2d 715, 719 (1–3).

It is also the general rule that an objection to the admission of evidence must be not only timely but also specific, containing a proper ground of exclusion, otherwise the trial court will not be convicted of error for overruling the objection. A rule of evidence not invoked is waived. Appelhans v. Goldman, Mo.Sup., 349 S.W. 2d 204(4). And relevant evidence, even if hearsay, received without proper objection may be considered, even though it would have been excluded on proper objection.

Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535, 539(3–5).

Applying these settled rules to the question before us, as earlier noted, when on direct examination plaintiff testified he was told by the police officer that it was Mr. Carter who "was having me picked up for questioning" the defendant's counsel's statement, "objected to because" is not a proper objection in that it failed to contain any ground for exclusion of the testimony. Apparently defendant's counsel was satisfied by what followed his interruption by the court for thereafter he did not seek to object again or to amplify by giving any ground for this earlier interrupted "objected to because" statement.

Such statements as "we object to it" or "objected to" have consistently been held not to be proper objections because they fail to state any ground for the objection, and a trial court is not to be convicted of error on appeal in overruling them. See, Johnson v. Kansas City Rys. Co., Mo.App., 233 S.W. 942; 27 Missouri Digest, Trial,

Assuming for the benefit of defendant that his counsel did not know the mentioned testimony was hearsay until cross-examination disclosed it, defendant's counsel on such disclosure had the opportunity then to move to have this particular testimony stricken from the record and the jury instructed to disregard it. However, he did not do so, but rather after that witness and other witnesses had testified, the following day made the broad, catch all motion to strike above set out in full. See, McCrary v. Ogden, Mo., 267 S.W.2d 670; Teters v. Kansas City Public Service Co., Mo., 300 S.W.2d 511. The motion fails to refer specifically to the quoted testimony in that such testimony had not been objected to earlier as hearsay. Rather, the motion to strike asked the court to strike "all conversation" and "all acts" occurring at the police station to which plaintiff testified.

It is the general rule that a motion to strike all the testimony of a witness, some of which is material and not previously objected to, is improper and it is not error to overrule it. Ray County Savings Bank v. Hutton, 224 Mo. 42, 123 S.W. 47; Owens' Estate v. Owens, Mo.App., 107 S.W.2d 150; State ex rel. State Highway Commission v. Mink, Mo.App., 292 S.W.2d 940. If less than all of the witnesses' testimony is to be stricken the movant should specify the particular testimony that he is asking to be stricken. Schwinegruber v. St. Louis Public Service Co., Mo.App., 241 S.W.2d 782; Gaines v. Schneider, Mo.App., 323 S.W.2d 401.

In addition to plaintiff's above quoted testimony concerning who caused his arrest, there is much other testimony by plaintiff in the record which was not objected to and which is relevant to one or more issues in the case. Under such circumstances the trial court did not err in overruling defendant's motion to strike.

Defendant's other contention is that the trial court erred in failing to grant it a directed verdict for the reason plaintiff failed to make a submissible case. Defendant particularly argues that there is no evidence from which it could be found that it caused or instigated plaintiff's arrest and confinement.

The constitutive facts of a cause of action for false arrest and imprisonment are clearly set out in such cases as Richardson v. Empire Trust Co., 230 Mo.App. 580, 94 S.W.2d 966, 970(3); Knupp v. Esslinger, Mo.App., 363 S.W.2d 210, 213; Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239; Winegar v. Chicago B. & Q. R. Co., Mo.App., 163 S.W.2d 357. As stated in the Richardson case supra, 94 S.W.2d loc. cit. 970, "The gist of the action is the wrongful arrest of one without a warrant and his unlawful detention. In order to hold one liable in an action therefor, it is always necessary to be shown that such one instigated, caused, or procured the arrest and confinement of the party complaining. * * * One who merely gives information regarding an offense justifying arrest does not incur liability * * * unless he goes beyond such point and instigates the arrest by suggestion and encouragement and countenances it."

While there is no fixed test for the determination of what is "instigating" an arrest, and each case must be determined on its own facts, it is clear in this case that plaintiff has made a submissible case. Not only did defendant through its manager tell plaintiff to come to the drive-in to pick up a nonexistent check as a pretext to having him present where he could be arrested, and arranged for the police to be there, but according to plaintiff, he was told at the police station when he inquired as to why he was being confined and questioned, that Mr. Carter was having him picked up and questioned. This evidence, if believed, is sufficient for a jury to base a finding that defendant did instigate plaintiff's arrest and detention. See, Randol v. Kline's, Inc., 332 Mo. 746, 18 S.W.2d 500; Knupp v. Esslinger, supra. The trial court did not err in refusing to direct a verdict for defendant.

The judgment is affirmed.

All concur.