William Marion SMITH, Appellant,

v.

ALLIED SUPERMARKETS, INC., and
William May, Respondents.

No. 58834.

Supreme Court of Missouri,
En Banc.

June 9, 1975.
Rehearing Denied July 14, 1975.

Niedner, Moerschel, Nack & Ahlheim, Edward C. Ahlheim, St. Charles, for plaintiff-appellant.

James E. Godfrey, Inc., James E. Godfrey, Samuel T. Vandover, St. Louis, for respondents.

BARDGETT, Judge.

In this false arrest case, plaintiff-appellant obtained a circuit court jury verdict in the sum of $1600 actual and $2000 punitive damages. The trial court set aside the verdict and entered judgment for defendants-respondents on the ground that plaintiff failed to make a submissible case. The issue of whether plaintiff made a submissible case turns principally on whether or not there was sufficient evidence from which a jury could find that defendants directed,

countenanced, advised, encouraged, or instigated the arrest.

Plaintiff appealed to the Missouri Court of Appeals, St. Louis District, where the cause was heard by three judges in division one of that court. The trial judge's action in entering judgment for defendants was affirmed by the court of appeals with one judge dissenting. The application of plaintiff to transfer to this court after opinion pursuant to Rule 83.03 was sustained, the appeal transferred, and will be decided as on original appeal.

■ In deciding whether a plaintiff has made a submissible case, the evidence must be viewed in a light most favorable to the plaintiff giving him the benefit of all inferences which may be reasonably drawn from the evidence in support of his cause of action. Eyler v. Allison, 500 S.W.2d 49 (Mo.App.1973); Chard v. Clarkson Const. Co., 377 S.W.2d 506 (Mo.App.1964).

At the outset it should be noted that it is undisputed that plaintiff was a victim of a false arrest in that he did not write the bogus check which was cashed by defendant Supermarket and for which he was arrested.

Plaintiff was arrested at his home in St. Charles, Missouri, about 11:00 p. m., on October 27, 1970, by the St. Charles police who told plaintiff they had a pickup order on him and was taken to police headquarters in that city. He was then taken into custody by two city of Bridgeton police officers, handcuffed, and transported to the Bridgeton police headquarters in St. Louis County. He was detained there until about 4:00 a. m. the following morning. While at the Bridgeton police headquarters, he was booked, fingerprinted, and photographed. He was told he was to be charged with writing a bogus check. He was interrogated and gave samples of his handwriting. It was finally determined that he was innocent and was released without charges being filed.

Chronologically, the events and circumstances which preceded and bore upon plaintiff's arrest are as follows:

In January 1969, plaintiff and his wife Julia E. Smith applied for check cashing identification cards at defendant Allied Supermarket (K-Mart) in Bridgeton, Missouri. The application shows plaintiff's name as William Marion Smith and his signature as William M. Smith. His wife's signature shows as Julia E. Smith. The address shown is 1817–19 1st Capitol Dr., St. Charles, Mo., the phone number is RA 4–1868 and listed in the name of Dorothie Knight. Plaintiff's bank is listed as 1st National Bank, St. Charles, Mo., checking account No. 745–136–5, and his employer is shown as McDonnell-Douglas, Lambert Field.

Defendant Allied issued one identification card to plaintiff and one to his wife. During 1969 and 1970, plaintiff cashed checks at defendant's store about once every five or six weeks but did not recall cashing checks there between May and October of 1970.

On May 23, 1970, someone appeared at the Allied Store in Bridgeton, of which defendant William May was the manager, and a Thomas Boden was the co-manager, and presented a check to Mr. Boden for cashing. Mr. Boden "okayed" the check by putting his initials on the reverse side and the customer received cash or merchandise for it.

The check was typical and in the following form:

```
"WILLIAM M. SMITH                                114
    Steven Peters
    2050 Woodson Rd.
    Overland, Mo.  63114                       80–1825
                               May 23, 1970       810

Pay
to the
Order of    K. MART                         $  64.88

    Sixty-four and eighty eight cents        DOLLARS

BANK OF OVERLAND
    Overland, Mo.
                        [/s/] William M. Smith   "
```

Mr. Boden, who "okayed" the check, had written a driver's license number and a telephone number on its reverse side. The driver's license number appeared as "S133–4690686851702" and the telephone number was "427–6963". A line was drawn through the telephone number.

Mr. Boden testified that the store's procedure in cashing checks was as follows. If a customer had a check cashing identification card issued by the store and presented it with a check, then the ID card number would be written on the check by Mr. Boden. If the customer did not have the ID card with him but had been issued one, Mr. Boden would look up the card in the store's files and write the ID card number on the check after comparing the signature and information on the store's card with the signature on the check and the driver's license number as given by the customer with the driver's license number in the store's files. A person can apply for a check cashing ID card and may be permitted to cash a check at the same time. In that event there would be no check cashing ID card number available yet, and therefore none would appear on the cashed check, but the check maker's driver's license number would be written on the check. There is also the possibility that an employee cashing a check for a customer would simply neglect to put an ID card number on the cashed check.

Neither the store manager May nor co-manager Boden recalled whether or not there was a check cashing ID card in the store's files for a William M. Smith of 2050 Woodson Road, Overland, Missouri.

Mr. Boden identified the instant check as one he had cashed by his initials on the reverse side thereof. This check, shown supra, had no check cashing ID number on it; the driver's license number on the check is S–133–4690–6858–51702, which is different from plaintiff's license number as shown on the application which was S133–4690–*0858–5339*. The phone number Mr. Boden wrote on the check was 427–6963 whereas plaintiff's phone number shown on the store's ID card application was RA 4–1868.

In short, the information contained on plaintiff's check cashing ID card application was not similar in any respect to the comparable information on the check that was cashed, except for the similarity of names.

The check was returned to Allied Supermarket by the Overland Bank on May 30, 1970, marked account closed. Mr. May called the phone number on the back of the check and was told the phone had been disconnected. He then mailed three letters to William M. Smith at the Woodson Road address shown on the check advising him that the check had been dishonored and requesting prompt payment. The first letter was not returned; the last two were returned marked "moved and no forwarding address". After the last of the three was mailed on June 16, 1970, Mr. May then requested the prosecuting attorney of St. Louis County to send a "ten day letter", but this too proved fruitless.

Also, in accordance with store policy there was an internal memorandum entitled "Return Check Report" prepared by the cashier under the supervision of Mr. May. This report showed that the check signed by a William M. Smith drawn on the Overland Bank was returned due to the fact that the account was closed. Written on this report was the notation "warrant for his arrest". The report was signed by defendant May, the store manager.

On October 27, 1970, Mr. May called the Bridgeton police and officer Hagen came to defendant's store at which time the officer was given the check cashing ID card application of William Marion Smith and the bogus check. Mr. May did not recall if he reviewed the application before giving it to the police, but he normally would do so, and he did not recall whether he was aware of the differences between the information on

the bogus check and that on the application. Mr. May testified at first that he signed a complaint against William M. Smith and later said he did not recall whether he did or didn't sign a complaint. Mr. May testified the Bridgeton police wanted all the information the store had on the check. In compliance with that policy, the Bridgeton police were given the application for check cashing card of plaintiff and the bogus check.

Officer Hagen testified he went to defendant's store in response to a call on October 27, 1970, and contacted Mr. May from whom he received the check cashing application and the bogus check and received a signed complaint in regard to the bogus check for the purpose of a prosecution in municipal court in Bridgeton.

The letter of June 16, 1970, sent by Mr. May to William Smith, 2050 Woodson, stated, "You are hereby given ten days from the date of this letter to make restitution on the above check, or the check will be turned over to the Bridgeton Police Dept., and the St. Louis County Prosecuting Attorney's Office, for legal action and Prosecution", and shows a copy was sent to the Bridgeton police department. The letter sent to the same addressee on June 30, 1970, stated that if the check was not paid by July 3, 1970, "I will have no alternative but to refer it to the proper public official for appropriate action."

After making copies of the documents he received from defendant May and returning the originals to the store, officer Hagen returned to the police station, wrote out the narrative of his report, and caused a teletype communication to be sent out for the arrest of William *Marion* Smith, 2050 Woodson Road, Overland, Missouri, on a charge of bogus checks. He got the middle name of *Marion* from the check cashing application of plaintiff. He testified he then checked the telephone directory and the criss-cross business directory and found a William M. Smith residing at 1817 1st

Capitol Drive, St. Charles, Missouri. He had the application for check cashing and was aware of the information contained on it at the time he was checking the directories. That information has been set forth supra and coincides with what the officer testified he found in one or the other of the directories. He testified he called the St. Charles police and asked them to investigate to ascertain if the William Smith in St. Charles was the same William Smith who had resided in Overland. He then learned from the Bank of Overland that the account upon which the check was drawn was closed May 18, 1970. Officer Hagen knew from the plaintiff's application given to him by defendant May that Plaintiff's bank was shown to be the First National Bank of St. Charles. He also determined that no William M. Smith resided at the Woodson Road address.

Officer Hagen was informed at about 11:50 p. m. the same day, October 27, 1970, that the St. Charles police had William Smith in custody at their police station. Hagen and his supervisor went to the St. Charles police department at about midnight. He asked plaintiff for his driver's license and compared the number with the number on the check and on the application which, according to the officer, corresponded. The number on the check was different from the number on the application and the officer testified that he might have only compared the plaintiff's license with the application and not with the number on the check.

Officer Hagen then placed plaintiff under arrest, advised him of his rights, handcuffed him, and took him in his police car to the Bridgeton police department, arriving there about 12:30 a. m. on October 28, 1970. The plaintiff was fingerprinted, photographed, booked, again advised of his rights, and interrogated. The officer asked plaintiff for any knowledge he had of the check; if he ever resided in Overland; if he had any knowledge of the second party on

the check, a Mr. Peters; and if he had ever banked with the Bank of Overland.

Plaintiff replied he did not know a Mr. Peters; he never banked with the Bank of Overland; he never lived in Overland; that he did not write the bogus check; and that he banked at the 1st National Bank of St. Charles.

Handwriting samples were obtained from plaintiff and he was released about 3:00 to 4:00 a. m. There remains a record in the Bridgeton police department of Mr. William Smith having been arrested in this matter.

Officer Hagen testified he took plaintiff into custody based upon the information he had and his investigation; that in the course of his investigation he was trying to determine whom it was who passed the bogus check; that no one told him who passed that check; and that Mr. May did not tell him whom to arrest.

The issue presented on appeal is whether the trial court erred in setting aside the jury verdict and entering judgment for the defendants. The resolution of this issue depends on whether or not the evidence in the case, viewed in the light most favorable to plaintiff, was sufficient to support a jury finding that defendants " 'directed, countenanced or encouraged,' or 'directed, countenanced, advised, encouraged or instigated the arrest' " of plaintiff. Davis v. Weil Clothing Co., 367 S.W.2d 19, 22 (Mo.App.1963); Knupp v. Esslinger, 363 S.W.2d 210 (Mo.App.1962). Said another way, did the defendants cause or procure the arrest of this plaintiff? Wehrman v. Liberty Petroleum Co., 382 S.W.2d 56, 60 (Mo.App.1964). This may be shown by direct or circumstantial evidence. Thompson v. Fehlig Bros. Box & Lumber Co., 155 S.W.2d 279 (Mo.App.1941). Plaintiff is entitled to all favorable inferences that can be properly and reasonably drawn from the evidence. McAlister v. Urhahn, 492 S.W.2d 19 (Mo.App.1973). However, merely giving wrong information to the police by making

an incorrect eyewitness identification of another, as in Davis v. Weil Clothing Co., *supra,* is not sufficient to support a plaintiff's verdict in a false arrest case.

It is the position of defendants that the evidence establishes that they merely turned over whatever information or facts they had in regard to the bogus check and left it to the Bridgeton police to act or not act as the police department saw fit, and that they did not instigate, direct, or cause plaintiff's arrest. Defendants rely upon Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239 (1948); Davis v. Weil Clothing Co., *supra*; Checkeye v. John Bettendorf Market, Inc., 257 S.W.2d 202 (Mo.App.1953); and Vimont v. S. S. Kresge Co., 291 S.W. 159 (Mo.App.1927).

Plaintiff's position is that the evidence was sufficient for the jury to find the defendants instigated his arrest, citing Knupp v. Esslinger, *supra*; Gerald v. Caterers, Inc., 382 S.W.2d 740 (Mo.App.1964); Vimont v. S. S. Kresge Co., *supra*; Richardson v. Empire Trust Co., 230 Mo.App. 580, 94 S.W.2d 966 (1936); and Snider v. Wimberly, *supra.*

There is no fixed test for determining what is "instigating" an arrest and each case must be determined on its own facts. Gerald v. Caterers, Inc., *supra,* at 744.

In this case the evidence clearly shows the defendants' course of conduct from the time the bogus check was returned to them on through the arrest. The defendants did not utilize the application of plaintiff for check cashing privileges at any time while the matter was still wholly in their hands to determine if that Smith was the one who cashed the check. This was not done even though the application was at all times in a readily accessible file in defendants' store. The letters of defendants were sent to William M. Smith, the maker of the check, and in whose name, together with one Steven Peters, the account at the Bank of Overland purportedly stood. They were sent to the

address shown on the check. In short, the evidence shows that the defendants did not believe, if they considered the matter at all, that this plaintiff had anything to do with the instant bogus check during the time defendants were attempting to collect on the check.

But the letters sent out by defendants also make it abundantly clear that they intended to and would turn the matter over to the Bridgeton police and the county prosecuting attorney "for legal action and Prosecution" of William Smith. This necessarily involves an arrest of the person to be prosecuted. A copy of defendants' letter to William Smith of June 16, 1970, was sent to the Bridgeton police but the police, although informed of the offense, were not requested to and did not take any action as of that time.

On October 27, 1970, defendants summoned the Bridgeton police to their store, and the jury could find, under the evidence that Mr. May signed a complaint in this matter. Although the testimony of officer Hagen was that the complaint was signed in blank because no one knew who passed the check, this evidence must be considered in conjunction with the other evidence in the case with respect to whether or not the defendants were instigating the arrest of William Smith or merely asking the police to investigate an alleged law violation in order to find out who passed the bogus check. The other evidence justifies a jury finding that the police did accept the signed blank complaint and that the purpose of the complaint was to cause the arrest of one William Smith, just as defendants threatened to do in their previous letters unless the check was paid. The testimony of officer Hagen that the complaint was for Bridgeton municipal-court purposes does not help defendants. Rather it emphasizes that the complaint was for the purpose of obtaining police custody of Smith for prosecution of some sort arising out of the bogus-check incident and is consistent with the interoffice memo showing the notation "warrant for his arrest" and the letter sent to Smith by defendants.

There is nothing in the record to even indicate that there was any question in Mr. May's mind as to who he wanted to proceed against. To the contrary, the record demonstrates he wanted to proceed against William M. Smith and that the police were being called upon to find that man for prosecution.

Mr. May testified he gave the police the plaintiff's application for check cashing privileges because the police wanted all the information Mr. May had with respect to the bogus check. Accepting this in the light most favorable to plaintiff, it means that the jury could find that the police were justified in believing that Mr. May had already determined that the Smith who passed the check and the Smith who made the application for check cashing privileges were one and the same and it was that man Mr. May wanted arrested.

The subsequent conduct of officer Hagen bears this out. He immediately put out a teletype which is a "wanted" type communication for the arrest of William Marion Smith, 2050 Woodson Road, Overland, Missouri, on a charge of bogus checks. The middle name "Marion" was taken from plaintiff's application which Mr. May gave to the police. This was done before officer Hagen made any investigation.

Officer Hagen testified he checked the "criss-cross business directory" and found a man by the name of William M. Smith residing at 1817 1st Capitol Drive, St. Charles, Missouri; that he believed he called the St. Charles police and asked them to ascertain if the William Smith residing in St. Charles could be the William Smith who had resided in Overland; and that he would have asked them to investigate that for him. However, the information as to plaintiff's address and phone number were all in the application defendant May gave the

police and the only conceivable reason to check a directory would be to determine if the information on the application was currently correct.

It is noted that officer Hagen never asked the St. Charles police to find out if plaintiff had written the bogus check or discussed any other facet of the matter. He wanted to know if the "Smith" in St. Charles had resided in Overland.

As set forth supra, the St. Charles Police took plaintiff into custody late at night; brought him to their police station and called officer Hagen. The St. Charles police did not tell plaintiff why they took him into custody but just that they had a pickup order on him. Officer Hagen then went to the St. Charles police station. He undertook no investigation with respect to whether or not plaintiff had written the bogus check, but, upon finding that plaintiff's driver's license number was the same as on plaintiff's application, he arrested plaintiff and took him to the Bridgeton police station. It was only after "processing" him as an arrestee in Bridgeton that any effort was made to find out if he wrote the bogus check. Upon being satisfied several hours later that they had the wrong man, plaintiff was released.

By setting forth the conduct of the Bridgeton police in this case, the court does not imply that persons who seek police assistance are responsible for police conduct. It is set forth to show that the acts done by officer Hagen and the resulting arrest are wholly consistent with the earlier letters and conduct of defendants and support a jury finding that defendants did instigate the arrest of plaintiff, and that defendants did not just report an offense, request an investigation or merely supply incorrect information.

The court holds that the evidence and the reasonable inferences derived therefrom were sufficient to support a jury finding that defendants in supplying the police with the bogus check and the check cashing application, taken together with the earlier letters to Mr. Smith threatening prosecution if the check was not paid, conveyed to the police the wholly unwarranted and incorrect conclusion on defendants' part that the check maker "Smith" and the Smith who applied for check cashing privileges were the same person and that the police should arrest that person.

Under the evidence in this case, a jury could reasonably find that the defendants did not intend to and did not leave the matter of whom to arrest to the police. The jury could reasonably find that the defendants directed the police to locate and arrest the plaintiff, William Marion Smith, the man who applied for check cashing privileges and that defendants had no reasonable basis at all for so doing.

This at least constitutes instigating an arrest. There was sufficient evidence from which the jury could reasonably find that defendants instigated the arrest of plaintiff.

This court's conclusion that under the evidence in this case the plaintiff made a submissible case is supported by Knupp v. Esslinger, *supra,* Wehrman v. Liberty Petroleum Co., *supra,* and Wright v. Hoover, 211 Mo.App. 185, 241 S.W. 89 (1922).

The trial court erred in setting aside the verdict and judgment in favor of plaintiff and entering judgment for defendants.

The judgment is reversed and the cause remanded with directions to reinstate the jury verdict and judgment for plaintiff as of the date of that verdict.

All of the Judges concur.