**Paul M. DAY, Respondent,**

v.

**WELLS FARGO GUARD SERVICE
CO., Appellant.**

No. 67835.

Supreme Court of Missouri,
En Banc.

June 17, 1986.
Rehearing Denied July 15, 1986.

Eugene K. Buckley, Laura B. Allen, St. Louis, for appellant.

Douglas P. Dowd, St. Louis, for respondent.

BILLINGS, Judge.

Plaintiff Paul M. Day filed an action against his former employer, defendant Wells Fargo Guard Service, [hereinafter Wells Fargo] for instigating and encouraging the St. Louis Police Department to falsely arrest plaintiff. The jury returned a verdict awarding plaintiff $15,000 in actual damages and $30,000 in punitive damages. We transferred the case following an opinion by the Missouri Court of Appeals, Eastern District. Mo. Const. art. V, § 10. We affirm.

The primary issue in this appeal is whether plaintiff produced sufficient evidence of defendant's instigation of plaintiff's false arrest to warrant submission of the case to the jury. Defendant contends plaintiff's proof on this issue was fatally deficient, and it was not shown that defendant caused plaintiff to be restrained against his will.

■ In determining whether plaintiff made a submissible case we must construe the evidence, together with all reasonable inferences drawn therefrom, in a light most favorable to the plaintiff—notwithstanding the fact that the evidence presented by the parties conflicted with respect to the critical facts of the case. *Troupe v. Super-X Drugs Corp.*, 659 S.W.2d 276 (Mo.App. 1983).

■ Before examining the quality of plaintiff's evidence, a few basic principles underlying an action for false arrest should be noted. A false arrest occurs when there " 'is confinement without legal justification

by the wrongdoer of the person wronged.'" *Rustici v. Weidemeyer*, 673 S.W.2d 762, 767 (Mo. banc 1984) quoting *Warrem v. Parrish*, 436 S.W.2d 670, 672 (Mo.1969). Section 112 of the Restatement of Torts (Second) defines an arrest in the following manner:

An arrest is the taking of another into the custody of the actor for the actual or purported purpose of bringing the other before a court, or of otherwise securing the administration of the law.

▇▇▇ In Comment C to § 112, the Drafters of the Restatement state that "an arrest is usually made for the purpose of bringing an actual or supposed criminal into court for the purpose of *investigation* or trial." (our emphasis) And the arrest of a person can occur without actual physical restraint—that is without the application of force or the handcuffing of the suspect. *See State v. Woods*, 620 S.W.2d 443 (Mo. App.1981). *See also State v. Maxwell*, 60 Ohio Misc. 1, 14 Ohio Ops. 3rd 44, 395 N.E.2d 531, 534 (1978) (officer's order to defendant to appear the following morning at police station was sufficient restraint on defendant's liberties to constitute arrest, notwithstanding the fact usual trappings of arrest did not occur). Furthermore, an arrest can be accomplished without a formal declaration of such. Section 544.180, RSMo 1978, describes the necessary elements of an arrest and nowhere mentioned is a requirement that the arresting officer make a formal declaration to the arrestee that he is under arrest.

▇▇▇ In *Rustici* we also concluded that "a person may ... be liable for false arrest if he ... merely instigates [the arrest], as in the case of providing information on the basis of which a subsequent unlawful arrest is made." *Id.* at 766. *See also, Smith v. Allied Supermarket, Inc.*, 524 S.W.2d 848 (Mo. banc 1975). Plaintiff need not prove that defendant actually ordered or directed the plaintiff's arrest, but only that defendant encouraged, promoted or instigated the arrest. *Troup v. Super-X Drugs Corp.*, 659 S.W.2d at 279. And, plaintiff is entitled to prove these facts by either direct or circumstantial evidence. *Id.*

The crux of plaintiff's theory of the case is that for a period of approximately six weeks in 1982, Wells Fargo wrongly accused him of stealing a missing pistol that had been issued to him on March 17, 1982. And that after defendant recovered the weapon and learned it was not stolen, but had been in the possession of another employee who was out sick until May 27, 1982, defendant, nevertheless, intentionally instigated the false arrest of plaintiff by St. Louis police officers on June 8, 1982.

▇▇▇ Plaintiff's evidence consisted of seven live witnesses, deposition testimony, and a number of documentary exhibits. In this connection, we note that some of plaintiff's proof included the prior inconsistent statements of a number of Wells Fargo's employees. Under *Rowe v. Farmers Insurance Company, Inc.*, 699 S.W.2d 423 (Mo. banc 1985), such statements are admissible as substantive evidence.

On March 17, 1982, plaintiff, a security guard in the employ of defendant, was issued a revolver for use in connection with the performance of his job. At the time that plaintiff was given this weapon, he routinely signed a firearm agreement which, among other things, identified by serial number the revolver being issued.

Plaintiff presented testimony that in the early morning hours of April 3, 1982, Carlos Sampson, a field inspector for defendant, visited plaintiff where he was stationed that day and told plaintiff that he needed plaintiff's weapon for use on the firing range where other employees were being qualified in the use of firearms. Plaintiff at that time gave Sampson the pistol that he was issued on March 17, 1982.

Plaintiff testified that later the same morning he asked Mike Fingerhut, one of his superiors at the agency, to make a record of the fact that his weapon was no longer in plaintiff's possession—so as not to conflict with the firearm agreement. Plaintiff testified further that Fingerhut

refused on the ground that the pistol would be returned immediately to plaintiff. Plaintiff, however, produced further evidence showing that after April 3, 1982, the weapon he was issued on March 17, 1982, was never again in his possession. On April 19, 1982, plaintiff resigned his position with Wells Fargo.

■ On direct examination, Mr. Fingerhut denied that he knew before June 8, 1982 that the revolver had been recovered and since its disappearance had been in the possession of another Wells Fargo employee, Eugene Bennett, who was on sick leave until May 27, 1982. However, in deposition testimony taken prior to trial and which plaintiff read into the record, Mr. Fingerhut testified that he learned that Mr. Bennett was in possession of the missing pistol sometime after the first part of May, 1982.

Daniel Bradshaw, the branch manager for Wells Fargo, testified that it was a matter of policy to notify the police when a missing gun is recovered, and he testified further that he was uncertain whether he instructed Mr. Fingerhut to notify the police that the gun had been found.

It was virtually undisputed that defendant first reported the gun missing to the St. Louis Police on May 20, 1982. Prior to this report Mr. Fingerhut had contacted plaintiff in April at plaintiff's new place of employment, National Industrial Security, and threatened plaintiff with arrest unless the weapon was returned. Additionally, Mr. Fingerhut made similar threats over the telephone to plaintiff's pregnant wife, and he also informed plaintiff's new employer of the controversy.

During the course of his testimony, Mr. Fingerhut admitted that he was interested in having the police investigate the matter. Both Mr. Fingerhut and Mr. Bradshaw testified that plaintiff was not notified prior to June 8, 1982, that Wells Fargo had found the missing weapon.

The false arrest of plaintiff occurred on June 8, 1982 when two police officers, White and Loftin, confronted plaintiff while he was on duty at his new job. The officers did not declare to either the plaintiff or his supervisor that he was about to be placed under arrest. Instead, plaintiff's evidence showed that the officers told the supervisor that "we [have] to take him with us." Plaintiff testified that the two officers told him that he had to go with them, and that he was afraid not to go with the officers and that he believed he had no choice in the matter.

Upon "taking" plaintiff, Officers White and Loftin directed and controlled his movements for nearly three hours. First, plaintiff was taken to defendant's offices where he was confronted by Mr. Fingerhut. Next, the police took plaintiff to his apartment to look for a receipt for the weapon he was presently using in connection with his new job. Then plaintiff was taken to a district police station where he was further questioned. From the police station, plaintiff was then taken by Officer Loftin to a Union Carbide facility to obtain additional information from another Wells Fargo employee.

■ We have reviewed the entire transcript and conclude that plaintiff presented sufficient evidence on the element of instigation by defendant to warrant submitting the case to the jury. And notwithstanding the fact that the entire trial was filled with sharply conflicting testimony and facts with respect to whether plaintiff was actually arrested, the jury was presented with sufficient evidence to warrant a conclusion that despite the absence of the customary trappings of an official arrest, Officers White and Loftin, nevertheless, intended to restrain plaintiff against his will, that they suspected him of committing the crime, that plaintiff did not voluntarily accompany the police for three hours and that at no time during the three hours was plaintiff free to remove himself from their control.

We hold that the jury could reasonably find that plaintiff was falsely arrested and that Wells Fargo instigated the false arrest. For these reasons, we find defendant's principal point to be without merit. Plaintiff made a submissible case and the

trial court was correct in allowing the case to go to the jury.

Defendant's remaining assignment of trial error goes to the submissibility of the issue of punitive damages and the proper standard of malice that should be applied. In connection with the latter point, the trial court instructed the jury that to award punitive damages, they must find that the defendant's conduct was willful, wanton or malicious. M.A.I. 10.01. The court then instructed them on the definition of malice, as defined by M.A.I. 16.01, and as required by the Notes on Use to M.A.I. 10.01. Under M.A.I. 16.01, malice is defined as the commission of a wrongful act without just cause or excuse.

■■■ In *Sanders v. Daniel Intern. Corp.*, 682 S.W.2d 803 (Mo. banc 1984), we held that M.A.I. 16.01, which defines the concept of malice, contained an erroneous definition of the culpable mental state necessary to find that a defendant committed a wrongful act with malice. We held further that there must be intent to cause the harm and that "hatred, spite or ill will is necessary to establish malice in fact." *Id.* at 813.

This question is important, but it is one that is not properly before the Court in this case. Defendant failed to make any objections in connection with the use of M.A.I. 16.01 at the trial level and defendant's motion for new trial was equally silent on this question. Thus, the question of whether the *Sanders* standard of malice applies outside of a malicious prosecution action was not properly preserved for review and we reserve deciding the issue for another day.[1]

■■■ Defendant, however, argues further that even under the standard of legal malice contained in M.A.I. 16.01, plaintiff failed to produce evidence of any kind that would warrant submitting the issue of punitive damages to the jury.

We think the evidence presented would allow a jury composed of reasonable men and women to conclude that Wells Fargo's employees knew before June 8, 1982 that the weapon had been found and that plaintiff had never stolen it or was even in possession of it after April 3, 1982. Reasoning upon these facts, the jury could conclude that defendant instigated plaintiff's false arrest without just cause or excuse. Assuming that the jury accepted plaintiff's evidence that when he was taken by the police to defendant's offices on June 8, 1982, and again accused by Mr. Fingerhut of a crime that never occurred and which Mr. Fingerhut knew never happened, it would not be unreasonable for the jury to conclude that such conduct was committed with malice, and was willful and wanton. We disagree with defendant's contention that this evidence was legally insufficient on the issue of punitive damages.

The judgment is affirmed.

HIGGINS, C.J., and ROBERTSON and RENDLEN, JJ., concur.

DONNELLY, J., dissents.

BLACKMAR, J., dissents in separate opinion filed.

WELLIVER, J., dissents and concurs in separate dissenting opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting.

The principal opinion properly holds that the plaintiff's evidence made a submissible case for liability and for actual and punitive damages. I believe that the defendant should be entitled to a new trial in which the jury is instructed on punitive damages in accordance with *Sanders v. Daniel In-*

---

1. The dissent of Blackmar, J., is interesting, for at least four separate reasons:

　(1) it erroneously ignores the *fact*, not "assertion", that defendant did not raise or preserve the punitive damage instruction issue at trial or in its motion for new trial;

　(2) it would reverse the trial court on a point not raised or preserved;

　(3) it would reverse the trial court on a point not raised or preserved by giving retroactive effect to *Sanders* —a case decided nine months after the instant case was tried;

　(4) it would reinstate the doctrine of remittitur in Missouri.

ternational Corp., 682 S.W.2d 803 (Mo. banc 1984). I maintain the views as to the form such instructions could take as set out in my Opinion Concurring in Result in *Sanders*.

I recognize the assertion in the principal opinion that the defendant showed no inclination to challenge the form of the instructions on punitive damages in the trial court, during trial or on motion for new trial. This failure would ordinarily preclude relief. *Sanders* had not been decided at the time the case was tried, and so counsel can hardly be faulted for not complaining about a submission which was apparently in accord with MAI and the governing law, but a party who submits a case under currently-approved instructions should normally be entitled to hold his verdict if the case is otherwise error free. *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983).

In *Vaughan v. Taft Broadcasting Company*, 708 S.W.2d 656 (Mo. banc 1986), however, we held that there is no vested interest in a punitive damage award. Because of this holding I do not believe that the punitive damage award in this case should be allowed to stand. I would reverse and remand for a new trial.

New trial on the issue of punitive damages alone is not practicable because the jury is obliged to consider all facts and circumstances. I would, however, give the plaintiff the option of relinquishing his claim for punitive damages and allowing the judgment to be modified to award actual damages only.